UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Criminal Case No. 22-20612
                                          Honorable Linda V. Parker

JOHNATHAN HAZLEY,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR BOND (ECF NO. 20)

Defendant Johnathan Hazley is charged with one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.) On November 18, 2022, Magistrate Judge Jonathan J.C. Grey[1] ordered Hazley detained pending trial after finding clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. (ECF No. 15.) The matter is presently before the Court on Hazley's Motion for Bond (ECF No. 20). The government filed a response (ECF No. 23), with no reply from Hazley.

---

[1] Judge Grey was the Magistrate Judge at the time of the detention hearing. He has recently been elevated to the role of U.S. District Judge for the Eastern District of Michigan.

## Background

On September 5, 2022, a Michigan State Police ("MSP") officer responded to a call reporting a shooting on the Southfield Freeway, M-39. Two victims met with the officer and provided a Michigan license plate number of a Chevy Equinox ("suspect vehicle"), later associated with Hazley, who allegedly fired two shots at the car, in which the victims were riding, from the left lane of the expressway. After MSP learned that the suspect vehicle was registered to an address at an apartment building, —where Hazley, his mother, and his sister along with her four-year old child reside—the officers reviewed the video footage and witnessed Hazley arrive and exit the suspect vehicle approximately an hour and twenty minutes after the reported shooting.

On October 11, 2022, MSP obtained a state search warrant for Hazley's home. During the execution of the warrant on October 12, 2022, the officers found the following firearms and ammunition; many of which were in *plain view*:

- a loaded Glock, Model 43x pistol (on top of storage rack) (Image 3);
- a Diamondback Arms Model DB15, 5.56 caliber rifle and magazine loaded with 62 rounds (on top of storage rack) (Images 3, 4);
- a loaded Taurus Millennium 9mm pistol, Model PT111 (on top of storage rack 4th shelf) (Image 5);
- a Romarm rifle, 7.62 x 39 caliber with one painted star magazine containing 20 rounds (northeast bedroom closet) (Image 6);

- 27 rounds of miscellaneous ammunition (on top of storage rack);
- 3 boxes of 38 caliber pistol ammunition (121 rounds) (on top of storage rack);
- 3 loaded extended pistol magazines loaded with 33 9mm rounds (on top of storage rack 4th shelf);
- a pistol holster (on top of storage rack 4th shelf);
- a 5.56 upper receiver with barrel (northeast bedroom closet);
- one metal high capacity drum magazine (northeast bedroom closet);
- 75 rifle rounds of 7.62 x 39 high capacity drum magazine (northeast bedroom closet);
- 2 rifle stocks (northeast bedroom closet in duffel bag); [and]
- 4 rifle magazines (1 loaded with 25 rounds of .223 caliber rifle rounds) (northeast storage shelf in pink lock box);

(ECF No. 23 at Pg ID 95-96; MSP Report, ECF 23-4). There was an additional box of 40 caliber ammunition that was found in the master bedroom (northwest bedroom) closet, which is where Hazley's mother exited during the execution of the warrant. (MSP Report, ECF 23-4.) MSP towed and searched the suspect vehicle and observed a bullet hole in the front passenger door, which MSP concluded to be an exit hole "consistent with the victims' descriptions that someone inside the suspect vehicle shot at them from the left lane of the freeway." (ECF No. 23 at Pg ID 105.)

3

**Applicable Legal Standard**

The review of detention orders is governed by the Bail Reform Act, which provides in relevant part: "If a person is ordered detained by a magistrate judge . . . that person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. 18 U.S.C. § 3145(b). The Court reviews the appeal of a detention order de novo. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992); *see also United States v. Koubriti*, No. 01-cr-80778, 2001 WL 1525270 (E.D. Mich. 2001) (noting that, although the Sixth Circuit has not squarely identified the proper standard of review of a magistrate judge's detention order, the majority of the circuits considering the issue hold that de novo review is appropriate).

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Nevertheless, under the Bail Reform Act, "a defendant may be detained pending trial . . . if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *Id*. (quoting 18 U.S.C. § 3142(e)). A judge's finding of dangerousness must be "supported by clear and convincing

4

evidence." 18 U.S.C. § 3142(f)(2)(B); *see also United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

The Bail Reform Act lists four factors courts must consider when deciding release decisions. 18 U.S.C. § 3142(g). First is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [sex trafficking of children or by force, fraud, or coercion], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device[.]" *Id.* § 3142(g)(1). The second and third are "the weight of the evidence against the person" and the individual's "history and characteristics[.]" *Id.* § 3142(g)(2), (3). The latter includes:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

*Id.* § 3142(g)(3). The final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4).

5

## Analysis

Hazley now asks the Court for release on bond pending trial, which is currently scheduled for April 11, 2023. In support of his motion, Hazley maintains that he should receive bond because he "poses neither a danger to the community, nor is he a risk of flight under 18 U.S.C. § 3142(f)." (ECF No. 20 at Pg ID 74, ¶ 5.) Hazley further argues that he has "strong family ties," a "stable residence," and the "ability to re-establish employment," and maintains that there are conditions that could be imposed to assure the safety of the community. (*Id.* ¶ 6.) The Court disagrees completely and finds that there is clear and convincing evidence that Hazley's detention is necessary to protect the safety of the community. Hazley's behavior raises significant concerns that he poses a danger to other persons if released.

First, the nature and circumstances of Hazley's crime is serious. This does not involve a single unloaded gun recovered at the home, but an arsenal of loaded, high-capacity firearms and ammunition, all possessed by an individual who is prohibited from possessing *any* firearms. Further, as the Government raises, the firearms and ammunition were discovered in plain view in the same home where a four-year old child (Hazley's niece) resides. This factor weighs in favor of detention.

Next, the second and third factors: the weight of the evidence against Hazley and his character and criminal history strongly weigh in favor of detention. *See United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (noting that "the weight of the evidence against the person . . . deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community.") The existence of Hazley's extensive criminal record is undisputed. (*See* PSR pgs. 4–8.) This history ranges from traffic and misdemeanor offenses to charges identical to the current indictment, including illegally carrying firearms, even while on bond and probation. (*Id*.) In addition to the history of crime, Hazley also has a history of flagrant disregard for the courts as evidenced by his failure to appear for court proceedings on at least nine separate occasions and absconding from supervision for approximately a month or more. (*Id*.; ECF No. 23 at Pg ID 100-102.) Further, the underlying allegation, which led MSP to issue a warrant and the subsequent discovery of firearms, involved victims being shot at merely because of road rage. Luckily, the victims were not injured, but the gravity of the allegations are concerning and informative as to Hazley's character. Based on this record, the weight of the evidence of Hazley's dangerousness and his character and criminal history weigh in favor of detention.

7

The final factor, the nature and seriousness of the danger Hazley poses to others, clearly supports detention. Between the shooting that stemmed from simple road rage to the loaded firearms left out in plain view and easily accessible to a four-year old, Hazley's level of dangerousness to others cannot be understated. In support of bond, Hazley maintains that conditions can be placed on his release that would "assure the safety of the community," which lean heavily on his "strong family ties" and "stable residence." However, the Court is unclear as to the existence of such strong family ties when Hazley's mother explained that she and Hazley do not talk much, Hazley doesn't tell her everything, and that he usually leaves at night and returns when she is already asleep. (ECF No. 23-3 at Pg ID 127.) Further, Hazley's request to be released back to the same home in which a plethora of guns and ammunition were seized, in plain view, does not convince the Court that Hazley will abide by bond conditions. Hazley's grandmother, who is elderly and requires care, is also not an appropriate guardian to ensure bond compliance.

Hazley's road-rage induced shooting, his access to guns and ammunition, his repeated failure to adhere to court-imposed bond conditions and failures to show to court hearings does not weigh in favor of approving Hazley's bond request. The Court is not convinced that any condition or combination of conditions will reasonably assure the appearance of Hazley and concludes that based on the

8

record—including his criminal history—he is a danger to the community and poses a substantial flight risk.

## Conclusion

For the reasons set forth above, the Court holds that the order detaining Defendant prior to trial should not be revoked.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Bond (ECF No. 20) is **DENIED**.

                                              s/ Linda V. Parker
                                              LINDA V. PARKER
                                              U.S. DISTRICT JUDGE

Dated: March 30, 2023